# IN THE
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

MICHELLE H.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:18-cv-01258-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9), the Commissioner's Motion for Summary Affirmance (Doc. 13), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

On August 4, 2015, Plaintiff Michelle H. filed her application for disability insurance benefits (DIB), and at that time, Michelle lived in Beulah, Colorado. Her claim was denied on January 14, 2016. She requested a hearing concerning her application for DIB on February 15, 2016. A hearing was held before the Honorable Jennifer M. Fellabaum (ALJ) on October 4, 2017. At that hearing, Michelle was represented by an attorney and a vocational expert (VE) testified. Following the hearing, the ALJ issued a favorable decision on November 7, 2017.

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket.

1

On January 5, 2018, the Appeals Council (AC) issued a Notice of Appeals Council Action in which the AC indicated it was reviewing the ALJ's Decision, found that the Decision was not supported by substantial evidence, and found that there was an error of law. The AC explained:

> Instead of relying on [the VE's] testimony, the [ALJ] found that the 32,400 jobs identified by the [VE] do not "constitute a significant number of jobs in the national economy" without any specific rationale or explanation for this conclusion . . . Such a finding is contrary to the evidence and is an error of law.

AR 135. Accordingly, the AC advised Michelle it intended to issue an unfavorable decision from August 25, 2015 through March 31, 2016. It further explained:

> Absent the submission of new and material evidence or persuasive legal argument, the [AC] intends to issue an unfavorable decision finding that you were not disabled during the relevant period at issue . . . We will find you not disabled under the framework of Medical-Vocational Rule 201.28 . . . and relying upon the testimony of the [VE].

AR 136. Michelle's attorney thereafter submitted a Response to Appeals Council Action which included rebuttal evidence in an attempt to show that the jobs named by the VE no longer existed in the national economy in significant numbers. Thus, Michelle's attorney contended, those jobs could not properly be relied upon to deny her claim.

On May 17, 2018, the AC issued its unfavorable decision which became the final decision of the Commissioner. Michelle filed the instant civil action seeking review of the AC's Decision on July 16, 2018.

## II

At the hearing, the ALJ first asked the VE whether he was familiar with jobs that existed in the regional and national economies, to which the VE responded in the affirmative. AR 42. The ALJ defined the local region as Colorado (where Michelle then lived) and the U.S. "in general." *Id*. The VE classified Michelle's past work. Thereafter, the ALJ asked the VE three hypothetical questions, the last of which

2

prompted the VE to identify three different jobs the hypothetical individual could do: "Your Honor, consistent with this Hypothetical, the Call-out Operator would survive . . . The Food Order Clerk is another one that will survive the Hypothetical . . . [there would also] be a position of Surveillance System Monitor." AR 47-48. The VE earlier testified that the Call-Out Operator job included 8,400 jobs nationally and "about 100 such positions" in Colorado. AR 45. The VE testified to "180 [Food Order Clerk jobs] and growing" in Colorado and "about 16,000" of those jobs nationally. AR 46. The VE testified to "about 80" Surveillance System Monitor positions in Colorado and "about 8,000" of those jobs nationally. AR 48. The ALJ next asked the VE whether any part of his testimony was inconsistent with, or not addressed by, the DOT. The VE answered:

> Your Honor, I'm not inconsistent with the DOT; however, unfortunately, it does not address with any specificity environmental irritants. It certainly doesn't address sit/stand option at – with any durational consideration. It does not consider fast pace or unprotected heights. I am forced to rely upon my experience as a rehab counselor, now exceeding 30 years of practice. During the course of this practice, I've performed thousands of labor market contacts, both in person and by phone. I've met with thousands of disabled workers. I've performed hundreds of factual on-site job analyses, in which I critically analyzed the functional demands of work, physically, cognitively, and affectively, in order for the worker to successfully reach and maintain proficiency in their job.

AR 48-49.

The ALJ thanked the VE and then stated, "And Ms. Lounsberry [Michelle's attorney], just so you know, Hypothetical 3, I find that that is not significant numbers in the national and regional economies." AR 49. Attorney Lounsberry responded, "Okay. Thank you, Your Honor" and stated she had no questions for the VE. *Id*. Thereafter, the ALJ accepted Michelle's amended onset date of August 25, 2015 and explained "so then this will go out as a fully favorable Decision from that date forward on both the Title II and the Title XVI." AR 51.

3

III

In her November 7, 2017 decision, the ALJ found: Michelle's date last insured was March 31, 2016; Michelle had not engaged in substantial gainful activity since August 25, 2015 (her amended onset date); Michelle had as severe impairments chronic heart failure, fibromyalgia, and obesity; and Michelle did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ made the following residual functional capacity (RFC) finding:

> The claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift/carry and push/pull up to 10 pounds occasionally and less than 10 pounds frequently. She can sit up to six hours and stand and/or walk up to two hours in an eight-hour workday, with the ability to sit or stand at the workstation as needed while remaining on task. She can never climb ladders, ropes and scaffolds. She can occasionally climb ramps and stairs, kneel, crouch and crawl. She can never be exposed to unprotected heights or hazardous machinery. She requires no concentrated exposure to environmental irritants. The claimant cannot perform fast-paced production work.

AR 19. The ALJ next found Michelle was unable to perform any past relevant work and, considering her age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Michelle could perform. The ALJ explained that to determine the extent to which Michelle's additional limitations eroded the unskilled sedentary occupational base under the Medical-Vocational Rules, she asked a VE whether jobs existed in the national economy for an individual with Michelle's age, education, work experience, and RFC. AR 21. The ALJ further explained that the work identified by the VE (call out operator, food order clerk, and surveillance system monitor):

> amounted to only 32,400 number of jobs nationally and 360 number of jobs regionally, which I find does not constitute a significant number of jobs in the national or regional economy. Based on the testimony of the [VE], I conclude that, considering the claimant's age, education, work experience and [RFC], the claimant is not capable of making a successful

4

> adjustment to other work. A finding of "disabled" is therefore appropriate under the framework of the above-cited rule.

*Id*. at 22.

Following Michelle's attorney's submission of rebuttal evidence to the AC following its notice to Michelle that it planned to issue an unfavorable decision, the AC entered its May 17, 2018 decision finding Michelle was not entitled to a period of disability or DIB under the relevant provisions of the Social Security Act. The AC stated it agreed with the ALJ's findings under steps 1, 2, 3, and 4 of the sequential evaluation:

> However, the [AC] does not agree with the [ALJ's] finding that, considering the claimant's age, education, work experience, and [RFC], there are "no jobs that exist in significant numbers in the national economy that the claimant can perform[.]" This finding is not supported by and is inconsistent with the evidence in the record and reflects an error of law.

AR 4-5 (citing ALJ's Decision at AR 21). The AC pointed out that because the ALJ could not directly apply the Medical-Vocational Guidelines, she utilized a VE to assist in determining Michelle's remaining occupational base and to determine whether she could perform other work existing in significant numbers in the national economy with her additional non-exertional limitations. After the AC summarized the VE's testimony about the jobs that existed and the numbers for those jobs nationally, the AC faulted the ALJ for finding the 32,400 jobs identified by the VE did not constitute a significant number of jobs in the national economy "without any specific rationale or explanation for this conclusion[.]" AR 5. The AC went on to discuss what the agency's regulations provided with regard to work that exists in the national economy in significant numbers. It commented that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where the claimant lives are not considered 'work which exists in the national economy[.]'" *Id*. The AC continued that to determine whether the sufficient number of jobs existed, it

5

took administrative notice of reliable job information available from various governmental and other publications including the Dictionary of Occupational Titles (DOT), and it used the services of VEs who relied on such sources.

The AC noted that a VE's testimony was provided in Michelle's case, and the ALJ did not identify any conflict between the VE's testimony and the DOT or other governmental publications and/or with Social Security Administration rules or policy. AR 6. The AC determined despite the ALJ's contrary conclusion, the preponderance of the record evidence – the VE's uncontroverted testimony – supported a finding of "not disabled" at step five. *Id*. The AC therefore relied upon the VE evidence and found Michelle not disabled during the relevant period at issue and not entitled to benefits. The AC then addressed Michelle's contentions in response to its January 2018 Notice. It said:

> [T]he [AC] is not substituting its judgment, but instead taking actions consistent with the regulations and issuing a decision that accurately reflects the evidence in the record that was before the [ALJ] and complies with our rules. On its face, the [VE's] testimony that there are three occupations with 32,400 jobs nationally constitutes a significant number of jobs in one or more occupations[.]

AR 6. Next, the AC addressed Michelle's representative's contention that "current labor market data suggest[ed]" the three occupations identified by the VE "no longer exist[ed] in the national economy and [could not] be used to deny the claimant[.]" *Id*. The AC acknowledged the representative presented evidence not previously submitted into the record and not relied upon by the ALJ to make her findings and conclusions:

> This evidence does not show that all three occupations "no longer exist in the national economy," but rather, suggests that some surveillance system monitor occupations in some industries may require more exertion and more skill, and some call-out operator or food order clerk occupations may have been automated or have changed duties since the last publication of the [DOT]. While this may be true, it does not change the fact that the [VE] testified that some of these occupations still exist in

6

significant numbers in the national economy as described in the [DOT], and the claimant could perform these jobs with the [RFC] assessed by the [ALJ]. Thus, the representative's contentions do not persuade us to change our action.

AR 6-7.

## IV

### A

The Appeals Council's decision in this case is the final decision. *See White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) ("[W]hen the Appeals Council reverses the ALJ's decision, it is the Appeals Council's decision which constitutes the Secretary's final decision for purposes of judicial review under 42 U.S.C. § 405(g)"). Where the Appeals Council reverses an ALJ's grant of disability benefits, a court limits its review to determine whether the Appeals Council's decision is supported by substantial evidence on the record as a whole. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). The ALJ's findings are reviewed as part of the record as a whole. *White*, 965 F.2d at 136. Where the Appeals Council has identified supporting evidence in the record and has built a logical bridge from the evidence to its conclusion, the court must affirm the decision even if reasonable minds could differ about the ultimate disability finding. *Schloesser*, 870 F.3d at 717.

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer

are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial

gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Michelle claims error on the AC's part at step five.

## B

Michelle argues that the record as described by the AC does not show that 32,400 jobs exist. She cites the AC's agreement that the rebuttal evidence suggested there was "some" reduction in the number of jobs cited by the VE. Michelle thus argues that by its own description of the evidence, the AC conceded that some number less than 32,400 jobs in the national economy was the "real number," and in the absence of any specific finding regarding that outcome-determinative fact, meaningful judicial review is impossible and remand is required. She argues the rebuttal evidence submitted to the AC demonstrates that far less than 32,400 total jobs exist; Michelle contends the evidence she submitted demonstrates zero surveillance system monitor jobs exist, likely zero call out operator jobs exist, and some reduced number of food order clerk jobs exist in the current economy. In opposition, the Commissioner argues that the AC reasonably determined a significant number of jobs existed in the national economy as testified to by the VE where there was no conflict between the VE's testimony and the DOT or any other governmental publications or agency rules or policies. In their briefs, the parties delve further into what numbers, specifically, constitute a "significant number of jobs" for purposes of the step five determination, and they dispute the application of the cited case law to answer that question. The Court need not reach that question because the AC never provided a definitive number of jobs that existed in the national economy for an individual of Michelle's age, education, work experience, and RFC.

The AC considered Michelle's rebuttal evidence as to the number of jobs that actually existed in the national economy. The AC did not reject Michelle's rebuttal evidence outright – it in fact acknowledged there may be "some" reduction in the testified-to numbers in light of that evidence – but it nevertheless failed to determine

what those reduced numbers were. Nor did the AC provide an explanation as to why it determined the rebuttal evidence suggested only "some" reduction in the numbers to which the VE testified. The AC's Decision is *illogical* in this respect. The AC did not elaborate in any way upon what "some" meant. Also, without setting forth those numbers, the AC did not build a logical bridge between the evidence of "some" reduction and its conclusion that the identified jobs existed in "significant numbers in the national economy" to sustain the Commissioner's burden at step five. In other words, the AC could not say jobs existed in significant numbers in the national economy where it never provided actual numbers.[2]

Curiously, the AC stated that even if true that the actual job numbers were reduced, that did not change the fact that the VE testified that some of the jobs "still exist[ed] in significant numbers in the national economy as described in the [DOT]." AR 6. The VE was not confronted with the rebuttal evidence and so the ALJ did not elicit testimony that those jobs "still exist in significant numbers." As Michelle argues in her Reply, the AC's finding that the reduction beyond 32,400 was only minimal is merely an assertion for which there is no support in the record. Put simply, substantial evidence does not support the AC's finding that jobs existed in significant numbers in the national economy that Michelle could perform.

The Commissioner's reliance upon the fact that the AC determined there was no conflict between the VE's testimony and the DOT such that the ALJ had no basis to reject the testimony is misplaced. The "DOT does not contain information on which to base an estimate of the number of available jobs of a particular kind." *Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir, 2015). Of course, it would be wrong to argue that Michelle's attorney should have taken issue with the basis for the VE's job numbers

---

[2] In its decision reversing the ALJ, the AC relied upon the fact that the ALJ rejected the VE's job numbers as not indicative of significant number in the national economy "without any specific rationale or explanation for this conclusion." Notably, the AC similarly failed to provide specific rationale or explanation for its conclusion of only "some" reduction in the testified-to job numbers such that a significant number of jobs in the national economy still existed.

10

(or otherwise challenge the testimony) where the ALJ promptly informed the attorney at the hearing that she found the testified-to numbers were *not* significant numbers in the national and regional economies and so Michelle was entitled to benefits.

The Commissioner's last argument – that nothing in the AC's decision supports Michelle's argument that it only looked at the job numbers – is similarly unconvincing. To the extent the Court *can* follow the AC's logic, it relied entirely upon the stark number of 32,400 to reverse the ALJ's decision and to deny benefits. The AC paid lip service to the regulations and rules, and then it stated plainly, "On its face, the [VE's] testimony that there are three occupations with 32,400 jobs nationally constitutes a significant number of jobs in one or more occupations[.]" AR 6. Notably, the Commissioner in her brief ends with the argument that "[u]nder any analysis, [32,400] is significant and this Court should uphold the AC's determination." Commissioner's MSA (Doc. 14 at pg. 9). The Commissioner persists in expecting the Court first, to accept the figure of 32,400 at face value and, second, to accept that number as sufficiently "significant" to uphold the AC's decision as supported by substantial evidence. The Court cannot make that latter determination where the AC failed to properly set forth actual numbers and instead only surmised there was "some" reduction in the job numbers provided.

It is for the above reasons that this case must be remanded for further administrative proceedings including, if necessary, a new hearing at which time Michelle can enquire into the basis for any testimony the VE offers, and the Commissioner can provide explicit reasons for its conclusions.

V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with the Court's Opinion pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on May 16, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE